

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-22-2003

# NLRB v. A G Mazzocchi Inc

Precedential or Non-Precedential: Non-Precedential

Docket 02-1875

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"NLRB v. A G Mazzocchi Inc" (2003). *2003 Decisions.* Paper 862.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/862

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 02-1875 and 02-2061

_____

A. G. MAZZOCCHI, INC.; AND MAZTEC
ENVIRONMENTAL, INC., AS ALTER EGOS
AND A SINGLE EMPLOYER, D/B/A
MAZZOCCHI WRECKING,
                    Petitioners in Docket No. 02-2061

v.

NATIONAL LABOR RELATIONS BOARD,
                    Petitioner in Docket No. 02-1875

_____

ON APPEAL FROM THE UNITED STATES
NATIONAL LABOR RELATIONS BOARD
Agency No. 0090-1 : 22-CA-24212

_____

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2003

_____

Before: SCIRICA, BARRY, and SMITH, Circuit Judges

(Opinion Filed: January 22, 2003)

_____

OPINION

_____

BARRY, Circuit Judge

Local 150 of the International Brotherhood of Teamsters and AFL-CIO ("the

Union") brought charges against Respondents A.G. Mazzocchi, Inc. and Maztec

Environmental, Inc. as "Alter Egos and a Single Employer d/b/a Mazzocchi Wrecking ("Mazzocchi")." On a complaint filed by General Counsel, the National Labor Relations Board found that Mazzocchi violated §§ 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), by refusing to assign work to three employees because of their union activities. The Board now applies for enforcement, and Mazzocchi cross-petitions for review. We have jurisdiction under 29 U.S.C. § 160(e) and (f) and will enforce the Board's order.

## I.

Mazzocchi, the employer in this dispute, has not contested the Board's finding that A.G. Mazzocchi, Inc. and Maztec Environmental, Inc. are alter egos and constitute a single employer within the meaning of the National Labor Relations Act. The two alter-egos are family-owned corporations in the demolition business. They have been doing business as Mazzocchi Wrecking since November 2000.

Robert Griles, Chauncey Singletary, and Jan Zajac ("the Employees") were hired by Mazzocchi as truck drivers. Griles began working for Mazzocchi in 1998, while Zajac and Singletary began in February 2000. Their immediate supervisor was Joseph Herzog. The drivers received a daily telephone call from Herzog to inform them of their work assignments for the following day. Herzog made these calls at the direction of Edward King, the Director of Operations. King was the person responsible for assigning work.

Beginning in May 2000, Zajac contacted the Union seeking Union representation

2

for Mazzocchi's truck drivers. An organizing campaign ensued, in which Zajac and Griles distributed authorization cards to other employees. Zajac was the Union's observer at the election on June 22, 2000. Singletary signed an authorization card. All three attended Union meetings. The Union won the election and signed a contract with Mazzocchi in November 2000.

Singletary had been working five days a week and sometimes Saturdays until two days before the June 22 election, when Herzog called him to tell him that he would not be working the next day. Herzog explained: "They're picking at you because they think you have something to do with the Union." After that time, Singletary began to work only one or two days a week. Around July 1, Mazzocchi hired a new driver, Joshua Moke. Moke worked regularly throughout July and August.

Zajac had been working five days a week until Herzog called him on July 31 telling him that he would not be working the next day: "You know how come." For more than a month, Herzog continued calling every day, each time telling him there was no work for him. In September, Herzog told Zajac: "Because you bring the Union... I don't think you'll be working again."

Griles had been working every day until early August, when he received a call from Herzog. Herzog told him that King felt that he had something to do with the Union, but that he would be working again once the Union contracts were signed. Griles began working every day in November 2000, after the Union contract was signed. While Griles had not received any work assignments for two months, drivers with less seniority had.

3

At the time the Union contract was signed, Griles was fifth in seniority out of sixteen drivers. Only two drivers, Moke and Melvin Bailey, were lower in seniority than Singletary and Zajac. Griles, Singletary, Zajac, and Moke were qualified to drive only trailer trucks, as were most of Mazzocchi's drivers. Bailey could drive both a trailer truck and a roll-off truck.

This case came before the Board on December 28, 2000, on a complaint filed by General Counsel pursuant to charges filed by the Union on behalf of the Employees. The ALJ issued a recommended order, finding that Mazzocchi violated §§ 8(a)(1) and (3) of the Act by refusing to assign work to the Employees because of their Union activities. Mazzocchi filed exceptions, and the Board affirmed, adopting the ALJ's findings. 335 N.L.R.B. 32 (2001). The Board filed an Application for Enforcement of its Decision and Order, and Mazzocchi filed a Cross-Petition for Review.

## II.

We will sustain the Board's findings of unfair labor practices if they are supported by substantial evidence in the record considered as a whole. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the facts to be established." Hanlon & Wilson Co. v. NLRB, 738 F.2d 606, 610 (3d Cir. 1984) (quotation omitted). We may not displace the Board's inferences from facts if supported by substantial evidence, even though we might have reached a different conclusion acting *de novo*. Hunter Douglas, Inc. v.

4

NLRB, 804 F.2d 808, 812 (3d Cir. 1986).

Section 8(a)(3) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(3), makes it an unfair labor practice for an employer to discriminate "in regard to hire or tenure of employment or any term or condition of employment to discourage membership in the labor organization...." A violation of § (8)(3) constitutes a derivative violation of § 8(a)(1). Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 698 n.4 (1983). Discriminating in work assignments in order to retaliate against an employee for his or her union activity violates §§ 8(a)(3) and (1). NLRB v. Gen. Warehouse Corp., 643 F.2d 965, 971-72 (3d Cir. 1981) (finding that employer violated §§ 8(a)(3) and (1) by giving employee unpleasant work assignment because of his union activities).

The test for determining the employer's motive for its action in "dual motive" cases was set forth by the Board in Wright Line, a Division of Wright Line, Inc., 251 N.L.R.B. 1083 (1980), enf'd on other grounds, 662 F.2d 899 (1st Cir. 1981), and affirmed by the Supreme Court in NLRB v. Transportation Management Corporation, 462 U.S. 393 (1983). General Counsel bears "the initial burden of making a prima facie showing by a preponderance of the evidence that protected conduct was a motivating factor" in the employer's action. Hunter Douglas, 804 F.2d at 813. The burden then "shifts to the employer to demonstrate that it would have taken the same action even in the absence of protected conduct by the employees." Id. at 813.

Mazzocchi argues that the Board's decision is not supported by substantial evidence because: (1) General Counsel did not prove that Mazzocchi knew of the Employees' union

5

activity or had anti-union animus; and (2) Mazzocchi proved its affirmative defense that the Employees would have received the same work assignments in the summer of 2000 in the absence of their union activities. We will address each argument in turn.

A. **Mazzocchi's Knowledge of the Employees' Union Activity and Anti-Union Animus**

The Board based its finding that Mazzocchi was aware of, or at least suspected that the Employees had engaged in, union activity and consequently curtailed their work assignments on statements made by Herzog, the Employees' supervisor. At King's direction, Herzog made daily calls to each of the drivers, telling them their assignments for the next day. Beginning June 20 and continuing until the Union contract was signed, Herzog repeatedly told the three Employees that Mazzocchi was refusing to assign them work because of their union involvement. The ALJ found that all three Employees were credible witnesses. He credited their testimony that they had been working full-time before the summer of 2000.

Because Herzog acted as King's agent, the Board reasonably inferred that he was speaking for King and Mazzocchi when he told the Employees that there was no work for them because of their union activities. As such, the statements are party-opponent admissions: an admission by Mazzocchi's agent concerning a matter within the scope of his agency. FED. R. EVID. 801(d)(2)(D). Thus, Herzog's statements are admissable as an admission by Mazzocchi that it acted with unlawful motive.

The decisions cited by Mazzocchi in which a court or the Board refused to infer anti-union animus from statements by non-decision-makers are inapposite. In NLRB v. McCullough Environmental Services, Inc., 5 F.3d 923 (5th Cir. 1993), for example, an employee who supported the union initially refused to sign a statement acknowledging that he had received a reprimand and was threatened with termination by his immediate supervisors. The day after the employee agreed to sign the reprimand, the employer created a new policy authorizing the discharge of employees who refused to sign a reprimand. McCullough, 5 F.3d at 932. The Fifth Circuit found that substantial evidence did not support the Board's finding of anti-union animus based solely on the timing of the new policy; the Court noted that the situation would be different if the Board had relied on circumstantial evidence to infer that the knowledge of one supervisor was communicated to the decision-making supervisor, rather than simply imputing the knowledge of one supervisor to the decision-making supervisor without explanation. Id. at 932-33. In contrast to what was before the Board in this case, the Board in McCullough did not have evidence that the decision-maker's agent repeatedly made admissions of anti-union animus when acting at the decision-maker's direction.

Alexian Brothers Medical Center, 307 N.L.R.B. 389 (1992) is likewise distinguishable in several ways. In Alexian, the ALJ found anti-union animus based on the fact that the most active union supporter was the first employee reevaluated under a new rating system and on a statement to the employee by his supervisor that "he thought the evaluation was because of the Union." The Board reversed the ALJ's finding of a § 8(a)(3)

7

violation, finding that the timing of the employee's new evaluation had "a factual basis that is free of any suggestion of discriminatory intent," because the employee was due for his next evaluation at that time and his last evaluation called for an explanation given that it contradicted a former rating. Alexian, 307 N.L.R.B. at 390. Here, however, Herzog's statements did not merely speculate as to the union connection but stated as a fact that the Employees' work assignments had been reduced because of their union activity. Moreover, Herzog did not make merely an isolated statement, but made multiple statements. Finally, Mazzocchi's proffered legitimate business justification for reducing work assignments was less credible than the employer's justification in Alexian. Similarly distinguishable is Gomez v. Allegheny Health Services, Inc., 71 F.3d 1079 (3d Cir. 1995), in which we refused to infer racial animus in an employment discrimination case based on a reference to the plaintiff as a "foreigner" in a letter by a defendant two years before the plaintiff's termination, where there was no evidence that the persons responsible for his termination ever saw or heard of the letter. Gomez, 71 F.3d at 1085.

In conclusion, the Board reasonably found that Herzog's statements were attributable to Mazzocchi. These statements constitute substantial evidence for the Board's finding that General Counsel made a prima facie case that anti-union animus was a motivating factor in Mazzocchi's decision to reduce the Employees' work assignments.


B.      **Whether the Employees' Union Activities Affected Their Work Assignments**

Mazzocchi also challenges the Board's finding that Mazzocchi did not sustain its

8

burden of showing that the same action would have taken place even in the absence of the protected conduct. Mazzocchi contends that: (1) even in the absence of union activity, the Employees would have experienced a reduction in work assignments because of a business downturn that began in June, and (2) Mazzocchi assigned work based on King's assessment of individual drivers' skills.

In particular, Mazzocchi argues that no evidence supports the Board's finding that a practice of seniority existed during the summer of 2000. Mazzocchi points out that the Employees seemed unsure as to whether Mazzocchi had a seniority system, because until the Union arrived, everyone was working. King testified that he took seniority into account in work assignments, but not as much as he considered individual drivers' skills. King's testimony that seniority was less important than skills was undermined, however, when he admitted that Zajac and Singletary lost work because they were "the two newest guys." Although Mazzocchi would have us interpret that remark as referring to their skill level, that interpretation is not compelled by the testimony. The Board could reasonably have inferred that King had a practice of taking seniority into account in work assignments.

Substantial evidence also supports the Board's finding that Mazzocchi deviated from any seniority practice in refusing to assign work to the Employees. Griles had seniority over ten of the fifteen drivers but did not receive any work assignments for two months, while drivers with less seniority worked. Two days before the June 22 election, Mazzocchi told Singletary that there was no work for him. About a week later, during the supposed work downturn, Mazzocchi hired a new driver, Joshua Moke. Moke worked regularly

9

throughout July and August, while the Employees, all with more seniority, were continuously told there was no work for them. Mazzocchi alleges that Moke was hired to work on the Atlantic City jobs that could only be serviced by Maztec employees, and he was hired as a Maztec employee. Mazzocchi, however, has not disputed the Board's finding that A.G. Mazzocchi, Inc. and Maztec Environmental, Inc. constitute a single employer within the meaning of the Act. Moreover, Mazzocchi has not adequately explained why it was necessary to hire a new Maztec driver to handle the Atlantic City jobs when at least three Mazzocchi drivers were not working. Moke had the same qualifications as Zajac, Griles, and Singletary. King testified that Maztec must comply with minority contractor requirements, but there is no evidence that Moke satisfied these requirements while the three Employees did not.

This evidence is more than a scintilla; it is substantial enough to discredit Mazzocchi's defense of a legitimate business justification and to support the Board's finding that Mazzocchi's true motive for failing to assign work to the Employees was to retaliate against them and discourage them from their union activities.

## III.

For the foregoing reasons, we will enforce the Board's order.

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

10

/s/ Maryanne Trump Barry
Circuit Judge